THE BALTIMORE ELEVATOR COMPANY OF BALTIMORE CITY *vs.* CHARLES .S. NEAL.

*Master and Servant—Negligence—Injury by Fellow-Servant—Expert—Evidence—Former carelessness or Unskilfulness—Declaration of Servant—Retention of Incompetent Servant—Habitual negligence—Unauthorized inference by Jury—Principle governing Recovery in Actions at Law—Erroneous instruction—Province of Court and Jury.*

The plaintiff while engaged as a laborer in shoveling grain from cars into the hoppers of an elevator, owned and operated by the defendant, was ordered by the foreman, whose order he was required to obey, to assist, in hauling in and fastening to the pier of the elevator, a square rigged vessel to be loaded from the elevator. The vessel had been brought to the pier by, and was in charge of, a steam tug commanded by an employé of the defendant. The captain of the tug neglected to have the yards of the vessel properly braced or stayed, so as to avoid contact with the elevator building, while in the act of being placed alongside the pier; and in consequence of this neglect of duty, the yards of the vessel came in contact with the building and knocked off a parcel of slating, which fell upon and injured the plaintiff. In an action by the plaintiff against the defendant to recover damages for the injury, it was HELD:

1st. That the captain of the steam tug and the plaintiff were fellow-servants, engaged in the same common service, of operating and carrying forward the business of the elevator, though employed in different departments of that service.

2nd. That the *onus* of proof was upon the plaintiff to show affirmatively, first, that the injury suffered by him was caused by the negligent or unskilful management by the captain of the tug, in attempting to place the vessel in tow in position alongside the pier; and if so, secondly, that there was want of ordinary care and diligence on the part of the defendant in the employment, or in the retention in service of the captain of the tug; and upon his failure to establish both these propositions, he could have no ground of action against the defendant.

One of the witnesses testified that he was at the time of the accident, and had been for eight years, foreman of the defendant in conducting the work of the elevator, and during that time had frequent and constant opportunities of observing the way in which the tug brought vessels into the wharf at the elevator. He also testified that he had been engineer and assistant engineer in different steamers plying to different parts of the country, and that he was familiar with the operation of tugs about the harbor of Baltimore, having been about the harbor for twenty-three years. HELD:

1st. That he was competent, as an expert, to give an opinion upon the state of the case as he observed it, as to whether the vessel was skilfully or negligently brought to the pier by the captain of the tug.

2nd. That it was not competent to show by the opinion of the witness, that upon former occasions, when bringing in vessels to the pier or wharf by the same captain of the tug, accidents had occurred, that those accidents were the result of negligence on the part of the captain, when those occurrences were not proffered to show knowledge on the part of the defendant or its superintendent, of the incompetency or negligence of the captain.

3rd. That proof of former acts of carelessness or unskilfulness on the part of the captain of the tug, furnished no legitimate ground of presumption that he was guilty of negligence on the occasion when the plaintiff was injured.

4th. That the knowledge or opinion of the witness, in regard to the want of competency or the negligent conduct of the captain of the tug on those occasions, could not be imputed to the defendant

or its chief managing officers, to show negligence in retaining an unfit employee; it not being shown nor pretended that the witness had any control over the captain of the tug, he had not employed him, and had no power to discharge him.

The declaration of the defendant's assistant superintendent, while engaged in the general management of the defendant's affairs, and while observing the captain of the tug in the act of bringing in a vessel to the wharf, that " the longer he was in the employ, the worse he got," or words to that effect, was admissible as bearing upon the question of knowledge by the defendant or its chief managing agent of the unfitness of the captain for his position; and as showing that the defendant had not used reasonable care to avoid retaining in its service an unfit servant after becoming possessed of such knowledge.

Negligence, such as unfits a person for service, or such as renders it negligent in a master to retain him in his employ, must be habitual rather than occasional, or of such a character as renders it imprudent to retain him in service. A single exceptional act of negligence will not prove a servant to be incapable or negligent.

The simple fact of the happening of the accident, did not authorize the jury to infer that there was negligence or unskilfulness on the part of the captain of the tug.

It is a principle of universal application in actions at law, that it is not upon the evidence alone, but upon the pleadings, and the evidence applicable to the pleadings, that a plaintiff can recover in any case.

An instruction to the jury, that if the defendant's agent had knowledge of any circumstances showing want of sufficient competency and skill of the captain of the tug, the defendant would be responsible, was erroneous as being too indefinite, and, therefore, misleading.

The jury should have been instructed as to what state of case would render it negligent on the part of the defendant to retain in its service the captain of the tug, leaving the jury to apply the evidence to such definition, and find accordingly.

The Court has no power to examine and decide upon the comparative weight of evidence; that is exclusively for the jury.

It is the duty of the Court to decide, as a preliminary legal question, whether there be any evidence legally sufficient to be considered by the jury; and the criterion for the determination of that ques-

tion is, whether the evidence is of sufficient probative force to enable an ordinary intelligent mind to draw a rational conclusion therefrom in support of the proposition sought to be maintained by it.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

The *first four exceptions* are sufficiently stated in the opinion of the Court.

*Fifth Exception.*—Captain James E. Griggs, a witness produced by the defendant, stated in his examination-in-chief, that he was a pilot by profession, and had been since 1844, and was in command of the Ice Boat Maryland. That he had had opportunities of knowing about his character, capacity and skill as a captain of a tug. That he had known Captain Martin about twelve years or more, and had had opportunities of observing him in the harbor, connected with vessels where he had been in his daily pursuit. On his cross-examination, the counsel for the plaintiff asked the witness the following question: State whether or not, in your judgment, when the captain of a tug controlling a square rigged vessel of about seven hundred tons, brings her to an elevator, with her yards, if braced, so partially braced that one or other of said yards come into such violent contact with the side of the elevator as to knock off the slating, if that evidences such captain to be a very skillful captain of a tug? The counsel of the defendant objected to said interrogatory, on the grounds, among others, that the testimony did not justify such a hypothetical question; that the question left out of consideration the fact that the yards of the vessel were several feet from the side of the elevator, until after the vessel had lurched, and that the form of the question was objectionable; but the Court overruled the objection, and permitted and required the witness to answer said ques-

tion, and he answered the same as follows: In bracing
the ship's yards, very often there is a projection of three
or four feet over the rail of the ship, when braced to the
back stay; but you couldn't brace the yards sharper than
that, on account of the rigging; under such circumstances,
I think the proper way was to haul the braces to the back
stays; in a case in which the yards were not hauled to
the back stays, and yet the vessel brought in, unless the
captain's attention was called off, he neglected that part
of his duty; that is the only reason I could assign for
it; if the yards were not braced, that was neglect, un-
doubtedly. Counsel for the plaintiff here interrupted:
"Do you mean back-stayed?" Witness replied: "I mean
braced up, sharp—yes." The defendant excepted.

*Sixth Exception.*—The plaintiff offered five prayers, the
third of which was refused as embraced in the second
prayer, the others, as follows, were granted:

1. That if the jury shall find from the evidence that
the defendant corporation, in the conduct of its business,
used a tug boat, owned or operated by it; and shall fur-
ther find that before and at the time of the happening of the
injury complained of, the said tug was under the direction
and control of Captain Martin, the agent of the defendant;
and that said tug did, on the occasion complained of, bring
in to the wharf of said elevator a certain vessel or barque,
in such manner as that its yards, or one of them, came
into such violent contact with the side of said elevator
building as to dislodge and cause to fall therefrom a por-
tion of the slate covering thereof; and if they shall fur-
ther find from the evidence that one or more of said slates
fell upon the plaintiff and inflicted the injury of which he
complains, by cutting his forearm, and that plaintiff was
at the time in the employ of defendant corporation; and
if the jury shall further find that the defendant had know-
ledge, or opportunity of knowledge, prior to the happen-
ing of the injury complained of, of circumstances showing

Baltimore Elevator Company *vs.* Neal.

want of proper care and skill on the part of its said agent in his said employment, and had thereafter retained him therein, then the plaintiff is entitled to recover in this action, unless they shall further find that the plaintiff directly contributed to cause his said injury by want of proper care and caution on his own part.

2. That if the jury shall find from the evidence that the plaintiff was employed by an agent or officer of defendant corporation, to work as a carman and in connection with the hoppers in its elevator, and that said agent had authority to employ and discharge the hands engaged in such work; and shall further find from the evidence that the injury complained of grew out of or was the result of a risk that was not open, visible and obvious; and shall further find that it was not natural or incident to the labor the plaintiff was engaged to perform, nor in contemplation at the time the agreement of service was entered into by him; and shall further find from the evidence that by directing the plaintiff to engage in the particular service in which he was ordered to assist, the defendant corporation, through its agent, Crawford, enhanced the risks to which plaintiff was exposed beyond the natural risks incident to the service for which he was specially engaged, and not in his contemplation when he entered into such engagement; and if they shall further find the defendant corporation did negligently, or with knowledge, or opportunity of knowledge, retain in its employment an unfit or unskilful servant, and that the injury complained of resulted from want of proper care and skill on the part of such servant, that the plaintiff is entitled to recover, unless the jury shall further find that the plaintiff directly contributed to the injury complained of by the want of proper care and caution on his own part.

4. That if the jury shall find from the evidence that before the happening of the injury of which plaintiff complains, any agent of defendant corporation having control

and general direction of its employés, had knowledge of any circumstances showing want of sufficient competency and skill on the part of Captain Martin in the management and control of the tug used in bringing in vessels to the elevator of defendant; and shall further find that the defendant did thereafter continue said Martin in its said employment; and if they shall further find that the injury complained of in this case was the result of want of proper skill and care on his part, then the plaintiff is entitled to recover in this action; unless they shall further find that plaintiff directly contributed to cause his said injury by want of proper care and caution on his own part.

5. That if the verdict shall be found for the plaintiff, the jury are, in estimating the damages, at liberty to consider the health and condition of the plaintiff before the injuries complained of, as compared with his present condition in consequence of said injuries, and whether the said injuries are in their nature permanent, and how far they are calculated to disable the plaintiff from engaging in those pursuits and employments for which, in the absence of said injuries, he would have been qualified, and also the physical and mental suffering to which he was subjected by reason of said injuries, and to allow such damages as in the opinion of the jury will be a fair and just compensation for the injuries which the plaintiff has sustained.

The defendant offered the twelve prayers following:

1. That no evidence has been given legally sufficient to entitle the plaintiff to recover under the pleadings in the cause, and the verdict must therefore be for the defendant.

2. That the plaintiff, by voluntarily and unnecessarily placing himself in the position in which he was when he received the injuries for which he seeks to recover, was guilty of contributory negligence, and the verdict must therefore be for the defendant.

Baltimore Elevator Company *vs.* Neal.

3. That there is no evidence that the plaintiff was bound to obey an order to assist in and about the mooring of a vessel to the building or wharf of the defendant, and he is therefore not entitled to recover under the pleadings in the cause.

4. That there is no evidence that the plaintiff was injured while employed in and about assisting in the mooring of a vessel to the building or wharf of the defendant, and he is not entitled to recover under the pleadings in the cause.

5. That there is no evidence that it was necessary or proper for the plaintiff to be in a position in which he could be injured by the slates which fell from the elevator on the day on which he was injured, and he is not entitled to recover under the pleadings in the cause.

6. That if the jury believe that the plaintiff was employed by the defendant solely as a shovelman, to aid in the transfer of grain from railroad cars to the elevator; that his duties did not require him to be where he could have been struck by any of the slates which fell from the elevator on the day on which he was injured, he is not entitled to recover under the pleadings in the cause, and their verdict must be for the defendant.

7. That even if the jury believe that the plaintiff was injured while engaged in performing a duty for the defendant, which he was bound to perform, he is not entitled to recover under the pleadings in the cause, unless they further believe that he was so injured by reason of negligence or want of skill on the part of the master of the defendant's tug, and further believe that the defendant was guilty of negligence in appointing or retaining said master in its service as such master.

8. That even if the jury believe that the plaintiff was injured by reason of negligence or want of skill on the part of the captain of the defendant's tug, and that the defendant was guilty of negligence in appointing said

captain, or in retaining him as such in its service, the plaintiff is not entitled to recover under the pleadings in the cause, if the jury believe that he would not have been injured but for want of ordinary care and prudence on his own part.

9. That the plaintiff is not entitled to recover under the pleadings in the cause, if the jury believe that he would not have been injured but for the want of ordinary care and prudence on his own part.

10. That the plaintiff is not entitled to recover under the pleadings in the cause, if the jury believe that want of ordinary care and prudence on his own part contributed to the injuries he received.

11. That the defendant is not responsible in this case, for any act or neglect of Captain Martin, unless the jury believe that the defendant was guilty of negligence in appointing him as captain of its tug, or in retaining him as such.

12. That the plaintiff is not entitled to recover under the pleadings in the cause, unless the jury believe from the evidence:

1st. That he was injured while he was engaged in and about assisting in the mooring of a vessel to the wharf or building of the defendant.

2nd. That he was so engaged by reason of an order which he was bound to obey.

3rd. That said vessel was, at the time he was so injured, under the direction and management of the defendant's agents or servants, or some of them.

4th. That at the time he was so injured, said vessel was being operated and directed by the defendant's agents or servants, or some of them.

5th. That he was so injured by reason of want of skill or care on the part of the defendant's agents or servants, by whom said vessel was being operated, or some of them.

6th. That the defendant was guilty of negligence in appointing for its said service, or retaining therein, the agent or agents, servant or servants, by reason of whose want of skill or care said injury to the plaintiff was caused.

Their verdict ought, in any event, to be for the defendant, if they believe that want of ordinary care or prudence on the part of the plaintiff, as to the position he occupied, or otherwise, was, in part, the cause of his being so injured.

In the argument of said prayers, the defendant, by its counsel, contended that there was no evidence in the cause that the plaintiff sustained the injury complained of, while in the execution of an order from a servant of the defendant, whose orders he was bound to obey, or that he was engaged in or about assisting in the mooring of a vessel to the building or wharf of the defendant, or while he was aiding to receive and transfer grain to or from its elevator or building, in, to, or into or from a vessel moored to the wharf or pier immediately adjoining the same ; or that the injury complained of was the result of want of care or skill on the part of Captain Martin ; or that prior to the happening of the injury complained of, circumstances showing want of proper care or skill on the part of said Martin, in his employment as master of defendant's tug, had come to the knowledge of the defendant, and that the defendant had thereafter retained him in its said employment ; or that there was any evidence of want of proper care or skill on the part of said Martin, or of care on the part of the defendant in appointing him as its agent, or retaining him as such, or that the plaintiff was exposed to any danger, beyond that which it was his duty to incur by order of the defendant, or of any one for whose order the defendant was responsible, or that any agent of the defendant having control or general direction of its employés, had knowledge of any circumstances showing want of sufficient competency or care on the part of said

Martin; and the defendant objected to each and every prayer of the plaintiff founded on the assumption of any such evidence, on the special ground that there was no evidence to sustain it, as well as on other grounds.

The Court (STEWART, J.) granted the seventh, eighth and eleventh prayers of the defendant, and rejected its other prayers. The ninth and tenth were rejected as being covered by the eighth.

The defendant excepted, and the verdict and judgment being rendered against it, appealed.

The cause was argued before ALVEY, C. J., MILLER, IRVING, RITCHIE, and BRYAN, J.

*John H. Thomas*, for the appellant.

*W. Hall Harris*, and *J. Morrison Harris*, for the appellee.

ALVEY, C. J., delivered the opinion of the Court.

The defendant in this case is the owner and operator of an elevator in the harbor of Baltimore, the business of which is the receipt, storage and transfer of grain from and to vessels, and other conveyances engaged in the business of transportation; and the plaintiff was a laborer employed in the service of the defendant in July, 1883, when the injury was received, for which this action was brought. The plaintiff was engaged as a laborer in shovelling grain from the cars into the hoppers of the elevator, and while so employed he was ordered by the foreman, whose order he was required to obey, to assist in hauling in and fastening to the pier of the elevator, a square rigged vessel to be loaded from the elevator; and it was while those in charge were engaged in the act of placing this vessel in position at the pier that the accident occurred, resulting in the injury to the plaintiff. The

vessel had been brought to the pier by, and was in charge of, a steam tug, commanded by an employé of the defendant; and the specific act of negligence or unskillfulness alleged is, that the captain of the tug neglected to have the yards of the vessel properly braced or stayed, so as to avoid contact with the elevator building, while in the act of being placed along side the pier; and in consequence of this neglect of duty the yards of the vessel came in contact with the building, and knocked off a parcel of slating, which fell upon the plaintiff and inflicted the injury complained of.

In the declaration, containing but a single count, after alleging the duty of the defendant to employ competent and careful servants and agents in conducting its business, and that the plaintiff was employed as one of its servants, the latter proceeds to allege, that while he was engaged in his work as such servant or employé, he was, by reason of the negligence and want of proper care and skill of certain servants of the defendant, who were unfit and incompetent persons to be such, and by reason of the failure of the defendant to exercise due and reasonable care and diligence in and about the control and management of its said work, and in and about the selection and employment of all agencies and instrumentalities appertaining to the conduct, direction and prosecution thereof; and while in the execution of an order from a servant of the defendant, whose orders he was bound to obey, in and about assisting in the mooring of a vessel to the building or wharf of the defendant, in connection with the prosecution of the said business, and which vessel was at the time under the control and management of the defendant, by its agents and servants, and was pushed or propelled up to the said wharf by means of a steam tug, operated and directed by such agents and servants of the defendant, and which said vessel was by them so negligently, carelessly and unskillfully controlled and managed, and so negligently and

unskillfully pushed up to said wharf or building, as that the spars thereof or one of them was or were violently brought in contact with and driven against the side of the said elevator building, whereby sundry slates or tiles were broken off and fell upon the plaintiff, inflicting upon him great hurt and injury, &c.   The case was tried upon the general issue, that the defendant did not commit the wrong alleged.

The action, as we perceive from the declaration, is by a servant against the master to recover for injuries resulting from the alleged negligence or misconduct of one who is supposed to have been a fellow-servant engaged in the same general employment with the plaintiff.   In such case the principle is, that the master is not liable for such injuries, unless he is shown to have been guilty of negligence or the want of ordinary care, either in the original employment, or the subsequent retention in service, of the servant whose alleged misconduct has caused the injury. Nor is the liability of the master enlarged or made different by the fact that the servant who has suffered the injury occupied a grade in the common service inferior to that of the servant whose misconduct caused the injury complained of.   And for the same reason it is not necessary, to the exemption of the master from liability, that the servant suffering the injury and the one causing it should be at the same time engaged in the same particular work..   If they are in the employment of the same master, engaged in the same common work and performing duties and services pertaining to the same general business, the master cannot be held liable to the one servant for injuries caused by the negligent or unskillful conduct of another, unless he has been negligent in employing or retaining in his service such negligent servant. This is now the settled doctrine, by the great preponderance of authority, both in this country and in England. Here, on the facts of the case, there would seem to be no

doubt or room for question, but that the captain of the steam tug and the plaintiff were fellow-servants, engaged in the same common service, that is, operating and carrying forward the business of the elevator, though employed in different departments of that service. And such being the relation of the two employés, the two principal questions involved in the trial of the case were, 1st, whether the injury suffered by the plaintiff was caused by the negligent or unskillful management by the captain of the tug in attempting to place the vessel in tow in position along side the pier; and, if so, 2ndly, whether there was want of ordinary care and diligence on the part of the defendant in the employment, or in the retention in service, of the captain of the tug. The onus of proof was upon the plaintiff to establish affirmatively both of these propositions; and, upon his failure to establish them both, he could have no ground of action against the master.

There were a good many witnesses examined, and several to the main facts involved, and their testimony is by no means free from conflict. In the course of the trial several exceptions were taken by the defendant as to the admissibility of evidence, and the questions thus raised we will first consider.

The first and second bills of exception present substantially the same question, and those exceptions will therefore be considered together. The question presented is, whether the witness Crawford was competent to express an opinion as an expert, upon the state of the case as he observed it, as to whether the vessel was skillfully or negligently brought to the pier by the captain of the tug to be placed in position to be loaded. This witness testified that he was at the time of the accident, and had been for eight years, foreman of the defendant in conducting the work of the elevator, and, during that time, had frequent and constant opportunities of observing the way in which the tug brought vessels to the wharf at the elevator.

He also testified that he had been engineer, and assistant engineer, in different steamers, plying to different parts of the country, and that he was familiar with the operation of tugs about the harbor of Baltimore, having been about the harbor for twenty-three years. He was certainly competent as an expert; and he was asked to give his opinion upon the state of the case as he witnessed it actually occurring. In the case of *Malton vs. Nesbitt*, 1 *C. & P.*, 70, before Lord Chief Justice ABBOTT, it was held, that you might call experienced nautical men, and ask them, whether in their judgment, particular facts, which had been proved, amounted to gross negligence in the captain of a vessel or not. And so in the case of *Fenwick vs. Bell*, 1 *C. & K.*, 312, in an action for running down the plaintiff's ship, it was held, that a nautical witness might be asked, whether, having heard the evidence, and admitting the facts to be true, he was of opinion that the collision could have been avoided by proper care on the part of the defendant's servants. 1 *Greenl. Ev., sec.* 440. The principle of those cases would seem to be quite applicable here. We are of opinion that there was no error in overruling the objection made as stated in the first and second bills of exception, and in allowing the witness to answer the questions propounded.

The third bill of exception presents the question whether, upon former occasions, when bringing in vessels to the pier or wharf by the same captain of the tug, and accidents occurred, it was competent to show by the opinion of the witness, that those accidents were the result of negligence on the part of the captain of the tug, when those occurrences were not proffered to show knowledge on the part of the defendant or its superintendent, of the incompetency or negligence of the captain of the tug. If this evidence had been offered, accompanied with a proffer to show that the facts of the occurrences referred to had been brought to the knowledge of the defendant, or its chief

managing officers, before the happening of the injury sued for, then, perhaps, the evidence would have been admissible, as reflecting upon the question of negligence of the defendant in retaining an incompetent or negligent servant. But offered as evidence simply to show that the captain of the tug had been guilty of negligent or unskillful conduct on former occasions, or to show knowledge in the witness, it was clearly inadmissible. Proof of former acts of carelessness or unskillfulness on the part of the captain of the tug furnished no legitimate ground of presumption that he was guilty of negligence or unskillfulness on the occasion when the plaintiff was injured. *Malton vs. Nesbitt*, 1 *C. & P.*, 70; *P. F. W. & Chicago R. R. Co. vs. Ruby*, 38 *Ind.*, 294. And it is not shown, nor pretended, that Crawford, the witness, had any control over the captain of the tug; he neither employed him nor had power to discharge him; and hence his knowledge or opinion in regard to the want of competency, or the negligent conduct, of that employé, on the occasion referred to, cannot be imputed to the defendant or its chief managing officers, to show negligence in retaining an unfit employé. We think, therefore, there was error in admitting the evidence objected to by the defendant, as stated in the third exception.

But the ruling as stated in the fourth exception, we think, was correct. The witness Crawford testified to a conversation had with Mr. Parr, the assistant superintendent of the defendant, in regard to the conduct of Captain Martin in the management of the tug. In that conversation, according to the witness, while observing the captain of the tug in the act of bringing in a vessel to the wharf, Mr. Parr declared of Captain Martin, that the longer he was in the employ the worse he got, or words to that effect. This declaration being made by the assistant superintendent, who was engaged in the work of the general management of the affairs of the defendant, it would seem to be admissible.

If this general agent had knowledge of the unfitness of the captain of the tug for his position, that knowledge would be legally imputable to the defendant; and evidence of the fact would be admissible. to show that the. defendant had not used reasonable care to avoid retaining. in its service an unfit servant, after becoming possessed of such knowledge. If, therefore, the declaration proved was intended to express dissatisfaction with the conduct. of Captain Martin, and to convey the idea that he had become, or was becoming, either incapable or negligent. in his occupation, it furnished at least some evidence for the consideration of the jury. *Malton vs. Nesbitt, supra.* But it is laid down as good text law, supported by decided cases, that negligence, such as unfits a person for service,. or such as renders it negligent in a master to retain him in his employ, must be *habitual*, rather than occasional,. or of such a character as renders it imprudent to retain him in service. *Wood on the Law of Master and Servt.,* sec. 432; *Moss vs. Pacific R. R. Co.,* 49 *Mo.,* 167; *Davis vs. Detroit R. R. Co.,* 20 *Mich.,* 105. A single exceptional act of negligence will not prove a servant to be incapable or negligent. If it were otherwise, no servant could be retained in service, for, as it has been truly said, there is. no person who has not at some time to some degree been negligent. A rule therefore that would require every agent or servant to be discharged from his employment for the first error or act of negligence that he might commit,. or even for occasional errors, to which every one is more or less liable, would operate the greatest hardship and injustice to the serving class, as well as to greatly augment. the liability of the employer. The true and real question in respect to this subject, says *Wharton,* in his work *on Negligence, sec.* 238, is, "not whether there has not been a. single act of negligence on the part of the person whose conduct is the subject of investigation, but whether this. act of negligence, in connection with other circumstances,.

and with his general character and conduct, was such as
to make his discharge by his employer a step of such pru-
dence as diligent and prudent employers in the particular
line of business are accustomed to exert. At the same time
such act or acts of negligence on the part of the employé are
proper items of evidence, if it appear that such acts were
known to the employer or his agents in chief." As we
have said, the declaration of the assistant superintendent,
if believed to have been made, was evidence only as bear-
ing upon the question of knowledge by the defendant or
its chief managing agents.

In regard to the fifth exception, we perceive no error
in the ruling there stated. Captain Griggs, the witness,
was shown to be competent to speak as an expert, and the
question objected to, and especially when considered in
connection with the answer, furnished no substantial
ground of exception. There was nothing elicited by the
question to which the defendant could object.

We come now to the sixth exception, which was taken
by the defendant to the rulings of the Court on the prayers
offered by the respective parties, plaintiff and defendant,
for instructions to the jury. And in regard to the first
prayer of the plaintiff, which was granted, it would seem
to be radically defective. It was intended as an instruc-
tion to cover the entire ground of the right of the plain-
tiff to recover, and it concluded with the assertion of such
right. But it failed to require the jury to find the essen-
tial fact that the injury to the plaintiff was caused by the
*negligent or unskillful manner* of bringing the vessel to
the pier by the captain of the tug. It did require, it is
true, the jury to find that the captain of the tug brought
the vessel to the pier of the elevator, " in such manner as
that its yards, or one of them, came into such violent con-
tact with the side of said elevator building as to dislodge,
and cause to fall therefrom, a portion of the slate covering
thereof," and that some portion of the slate, thus torn off,

fell upon the plaintiff and inflicted the injury. But the finding of these facts was not the same thing as or equivalent to finding negligence or unskillfulness on the part of the captain of the tug. That the slating of the elevator building was knocked off by the yards of the vessel coming violently in contact with it, may be conceded to be true, but it may have been from the operation of causes quite different from that of the negligence or unskillfulness of the captain of the tug. The question was, upon the evidence, whether the yards of the vessel were properly braced or stayed, and the vessel brought to the pier in a reasonably safe manner to avoid collision with the elevator building, and whether it was from the neglect or unskillfulness in those respects that the accident occurred. The jury should not have been allowed to infer from the simple fact of the happening of the accident, that there was negligence or unskillfulness on the part of the captain of the tug. That is justified by no decided case, and is in conflict with the well established principle, that it is incumbent upon the plaintiff, in this class of cases, to establish by affirmative proof, that the injury received by him was caused by the negligent or unskillful act of the fellow-servant. The finding of this latter fact by the jury, is a condition precedent to any right of recovery against the master, for negligence in retaining in his service such negligent or incompetent fellow-servant. This prayer, therefore, should have been rejected.

The second prayer of the plaintiff, also granted, is also objectionable, because its hypothesis of fact is neither in accord with the pleading, nor the evidence in the cause. There is a special objection taken to each and all of the prayers offered on the part of the plaintiff, upon the ground that there is a want of evidence to support them. By the seventh prayer of the defendant, which was granted, the jury were instructed that if the plaintiff was injured while engaged in performing a duty for the de-

fendant, which he was bound to perform, he was not entitled to recover *under the pleadings in the cause,* unless they should further find that he was so injured by reason of negligence or want of skill on the part of the captain of the defendant's tug, and further find, that the defendant was guilty of negligence in appointing or retaining the captain of the tug in its service. This instruction was strictly correct; but the second prayer of the plaintiff was wholly inconsistent with it, and therefore well calculated to mislead the jury. It would seem to be neither within the pleadings nor the evidence in the case. It is a principle of universal application in actions at law, that it is not upon the evidence alone, but upon the pleadings, and the evidence applicable to the pleadings, that a plaintiff can recover in any case. Here, the plaintiff, by his own witness, Crawford, proved that he was employed to do *general* work of the elevator, and he has alleged in his declaration that he was bound to obey the orders given him in respect to that work, and the whole ground of the action is, that while performing his *duty* in obedience to orders given him, he was injured by or in consequence of the negligent or unskillful conduct of a fellow-servant. Yet, by this second prayer, it was put to the jury to find, and the right of the plaintiff to recover allowed to be based upon such finding, that the plaintiff was employed *only* to work at the hoppers in unloading cars, and that it was no part of his work to assist in fastening the vessels to the pier to be loaded from the elevator ; thus placing his right to recover, in disregard both of his pleading and evidence, upon the theory that he was unwarrantably placed in a position of peril, by the order of Crawford, the foreman, in violation of the contract of employment. This prayer should have been rejected.

With respect to the fourth prayer of the plaintiff, also granted, that would appear to be equally objectionable, as being calculated to mislead the jury. By the granting of

this prayer, the jury were instructed that if *any* agent of the defendant having control and general direction of its employés, had knowledge of *any* circumstances showing want of sufficient competency and skill by Captain Martin in the management and control of the tug used in bringing in vessels to the elevator of defendant, and that Martin was thereafter retained in service, and that the injury complained of was the result of want of proper skill on his part, then the plaintiff was entitled to recover, &c. Now, what may have been intended by the Court, or what the jury may have understood, by the terms, "any agent of the defendant having control and general direction of its employés," in view of the evidence admitted under the ruling of the Court as set out in the third exception, and the granting of the plaintiff's second prayer, is far from being clear. Crawford, the foreman, had the power to employ and direct the laborers of the class of the plaintiff, engaged in the work in the elevator; but he had no power to employ, direct, or discharge, the captain of the tug boat; and as the prayer is susceptible of such construction as would make it apply to and embrace Crawford as one of the agents referred to, it is clearly wrong. But the instruction was objectionable in another particular. It instructed the jury that if the agent had knowledge of *any* circumstances showing want of sufficient competency and skill by Captain Martin, the defendant would be responsible. This was too indefinite, and therefore misleading. The jury should have been instructed as to what state of case would render it negligent on the part of defendant to retain in its service the captain of the tug, leaving the jury to apply the evidence to such definition, and find accordingly. The liability of the defendant is not for the negligent or unskillful act of the servant alone, but for its own negligence in connection with that of the servant; and hence the jury ought to be required to find the essential fact of the negligence of the defend-

ant, and not mere circumstances that may tend to prove such negligence. *Moss vs. Pacific R. R. Co.*, 49 *Mo.*, 107.

The defendant offered a number of prayers, only part of which were granted. Those refused sought to withdraw the case from the jury. But upon careful examination of the testimony, as set out in the record, we are of opinion that the Court below committed no error in refusing those prayers. There was testimony enough to require the case to be submitted to the jury. The Court has no power to examine and decide upon the comparative weight of evidence; that is exclusively for the jury. It is the duty of the Court to decide, as a preliminary *legal* question, whether there be any evidence *legally* sufficient to be considered by the jury; and the criterion for the determination of that question is, whether the evidence is of sufficient probative force to enable an ordinary intelligent mind to draw a rational conclusion therefrom, in support of the proposition sought to be maintained by it. According to that test, without any reference whatever to countervailing evidence, we think the Court could not have done otherwise than submit the case to the jury. As the case will be remanded for a new trial, we shall refrain from any comment upon the evidence. The judgment will be reversed and a new trial awarded.

> *Judgment reversed, and*
> *new trial awarded.*

(Decided 23rd June, 1886.)