## L. DEWEY HOOD *v.* ROSE AZRAEL

[No. 38, October Term, 1934.]

*Decided December 14th, 1934.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, PARKE, and SLOAN, JJ.

*Walter L. Clark* and *Roszel C. Thomsen,* with whom were *J. Louis Raap* and *Clater W. Smith* on the brief, for the appellant.

*Edward L. Ward,* with whom was *Edward Azrael* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

The defendant, L. Dewey Hood, trading as Blue Ridge Coal Company, is in the business of selling coal at retail in the City of Baltimore. A customer gave an order for coal, and, while it was being carried in a truck for delivery to the customer, a collision occurred between the truck and an automobile in which the plaintiff was riding as a guest. There was evidence tending to establish that the injuries sustained by the plaintiff, who was

without fault, were the direct result of negligence in the operation of the truck by its driver, a colored man named Kermit Edmunds. The primary question on the record is whether Edmunds was, at the time of the collision, the servant of the defendant or an independent contractor.

Edmunds was the bailee and driver of a truck, and hired and paid the man who helped him in loading and unloading. The bailee kept the truck, which had a capacity of two tons, on his own premises, maintained it in repair and in operating condition; bought all the oil, gasoline, and supplies at his own expense; and had possession of the truck and entire control of its use. For a few months before the collision, the bailee was endeavoring to make his living by hauling with this truck, and went practically every day, but at whatever hour it suited him, to the defendant's coal yard to get coal to haul, as the defendant was, almost exclusively, his patron, although neither was bound by contract beyond each job of hauling. The defendant, when he had coal to be delivered at the time of the truckman's call at the coal yard, gave the bailee an order for coal that bore the name of the defendant as the seller, the kind, quantity, and price of the coal ordered, and generally the name and address of the customer, and usually instructions not to deliver the coal until the amount due had been paid. The truckman would receive the written order for the coal, and drive the truck to the right bin, where he and his helper would fill the sacks with the quantity and kind of coal purchased; and put the sacks on the truck. Thus loaded, the truck was then driven off in charge of the truckman to the residence of the purchaser, where the truckman would first collect the amount shown to be payable, and then leave the coal, and return to the coal yard to give the money collected to the defendant. If the buyer did not pay, the coal would be returned to the yard. The sacks in which the coal was delivered were furnished by the defendant, and were commonly left on the truck. For the services so rendered, the truckman

was paid weekly for the tonnage of coal hauled during that period at the rate of ninety cents a ton, unless the coal was hauled beyond the limits of the city, when an increased compensation was paid.

The defendant offered no proof, and there is no conflict of evidence. The record does not present any testimony from which the jury might have found that the defendant was negligent in engaging the truckman to haul the coal in the truck he was using at the time of the collision. See *Wonder v. Balto. & O. R. Co.*, 32 Md. 411, 418; *Hanrathy v. Northern Central Ry. Co.*, 46 Md. 280, 288; *Balto. Elevator Co. v. Neal*, 65 Md. 438, 451, 5 A. 338. Nor can it be maintained that the hauling and delivery of coal in sacks is a nuisance, nor such inherently dangerous work that a principal becomes liable for the acts of his independent contractor while doing the thing promised. *Whitelock v. Dennis*, 139 Md. 557, 561, 116 A. 68; *Rounds v. Phillips*, 166 Md. 164, 170 A. 532, 536. So the question on the undisputed evidence is simply whether the driver of the truck was a servant of the defendant or an independent contractor. *Bentley, Shriver & Co. v. Edwards*, 100 Md. 652, 658, 659, 60 A. 283; *Hall v. Poole*, 94 Md. 171, 177, 50 A. 703; *Norfolk & Western Ry. Co. v. Hoover*, 79 Md. 253, 265, 29 A. 994; *Yates v. McCullough Iron Co.*, 69 Md. 370, 382, 16 A. 280.

In *Deford v. State*, 30 Md. 179, at page 203, Judge Alvey stated for the court "that the rule of 'respondeat superior,' does not apply where the party employed to do the work, in the course of which the injury occurs, is a contractor, pursuing an independent employment, and, by the terms of the contract, is free to exercise his own judgment and discretion as to the means and assistants that he may think proper to employ about the work, exclusive of the control and direction, in this respect, of the party for whom the work is being done."

Again, in *Balto. Boot & Shoe Mfg. Co. v. Jamar*, 93 Md. 404, 49 A. 847, 850, the same principle is expressed in these terms: "The relation of master and servant rests upon a contract of service, express or implied, between

the parties, the essential elements of which are that the master shall have control and direction not only of the employment to which the contract relates, but of all of its details, and shall have the right to employ at will, and for proper cause discharge, those who serve him. If these elements are wanting, the relation does not exist. *Wood, Master & Servant* secs. 1, 4; *Bailey, Pers. Injuries Relating to Master and Servant,* sec. 3139 *et seq.; Shearman & R. Negligence,* sec. 160; 14 *Am. & Eng. Enc. Law,* [1st Ed.] p. 745"; *Bell v. State,* 153 Md. 333, 337, 138 A. 227; *Vacek v. State,* 155 Md. 400, 408, 142 A. 491; *Cooley on Torts* (3rd Ed.) vol. 2, p. 1098.

The contractor, on the record at bar, was engaged in the occupation of hauling for hire whatever was offered within the capacity of a motor truck of which he was the bailee. The defendant was his principal, although not wholly exclusive, hirer, but this circumstance does not affect the independent nature of his business. Every job of hauling was a separate transaction, whose unity was not changed by the circumstance that settlements were on a weekly basis. So far as the defendant is concerned, every hiring began with the delivery by the defendant to the truckman of an order for coal that was to be delivered to the customer in large canvas sacks which the defendant supplied. From that point, the employment of the truckman was independent of his hirer, and the truck, its possession, control, use, up-keep, and repairs were in the truckman, who, with his own selected servants, filled the sacks with coal, loaded them on the truck, and hauled them to their destination along whatever route and in such time as he might choose, and all the while operated according to his own judgment and discretion, and with such assistants as he might see fit to use in the performance of the contract of carriage. The method of collecting the price of the coal from the customer, and of the payment of the money to the hirer, or, in the event the customer failed to pay, the return of the sacks of coal to the dealer, were left in the control of the truckman. Consequently, from the terms of the

contract, the service to be rendered by the truckman was in an independent employment, wherein he was free to exercise his own judgment and discretion as to the means and servants he would use in the performance of an undertaking which was not within the control of the hirer. So long as the truckman got the coal for delivery, and returned either the money received from the customer or, in case the buyer did not pay, the coal, his contract was finally performed, no matter the intervening means adopted. In the period comprised between the beginning and the end of performance of the contract, the truckman was not subject to the command of the dealer in respect of the manner in which he would perform the contract. Since the power of controlling the manner of the doing of the service agreed was in the truckman, and not in the hirer, the latter was not liable for the negligence of the former in the course of the performance of the contract, and it was error for the *nisi prius* court to refuse the prayer of the defendant that instructed the jury to find for the defendant. *Supra*; *Waldock v. Warfield, L. R.* (1901) 2 K. B. 596; *Beven on Negligence* (4th Ed.) pp. 754, 759.

> *Judgment reversed without a new trial, with costs to the appellant.*