MARYLAND CASUALTY CO., use of itself and Kinchin *v.* SAUSE et al.

[No. 102, October Term, 1947.]

*Decided March 17, 1948.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Robert E. Coughlin, Jr.,* and *Sigmund. Levin,* with whom were *Paul Berman* and *Theodore B. Berman* on the brief, for the appellant.

*Roszel C. Thomsen,* with whom were *Clater W. Smith* and *Clark, Thomsen & Smith* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

Ernest Kinchin, an employee of The Potts-Callahan Paving Company, was injured in August 1945, when a truck load of stone dust was dumped upon him while at work in a bin on the premises of his employer. The truck in question was owned and operated by Royal H. Comes, whose services in hauling road material for the Potts Company had been procured by J. William Sause. Kinchin, as an employee of the Potts Company, received an award of Workmen's Compensation, and thereafter an

action for negligence was brought against Comes and Sause by the insurance carrier to its own use and that of Kinchin. At the first trial the jury failed to agree. On the second trial in the Superior Court of Baltimore. City, the jury again failed to agree, and the trial court subsequently granted a motion for judgment in favor of Sause, on the ground that there was no evidence in the case legally sufficient to show that the relationship of master and servant existed between Sause and Comes at the time of the injury. The appeal challenges the correctness of that ruling.

Sause was a hauling contractor who owned ten dump-trucks. In August, 1945, he had an oral contract with The Potts-Callahan Paving Company, a paving contractor and manufacturer of road building materials, to haul such materials in and out of its plant at 2801 Falls Road in Baltimore City. The Potts Company itself owned a number of trucks, which were, however, insufficient for the particular work in hand. Under its contract with Sause, the latter agreed to supply as many additional trucks and drivers as might be necessary.

The arrangement was that Sherwood, the Superintendent of the Potts Company, would call Sause every night and advise him of the number of trucks the Company would need on the following day, and what they were to do. When Sause was requested to furnish more than ten trucks, he would hire individuals, like Comes, who owned and operated their own trucks, or persons, like himself, who owned a number of trucks. On some days he supplied as many as thirty trucks.

Sause testified he hired Comes to work on this particular job with his truck. He also testified that he had a right to "fire" Comes at any time, if he or the Potts Company found that Comes' services were not satisfactory, and that he frequently visited the scene of operations to check the loads and time and to see that the trucks were being operated in a manner satisfactory to the Potts Company. In connection with the work in hand, he told Comes to haul stone dust and crushed

stone from the Greenspring quarry to the Potts plant, and to alternate with another driver in the type of load. Sause denied, however, that he ever supervised the work of his drivers after they reported to the Potts Company, which had the right to direct the drivers where to go and what to haul on any given day. Kinchin testified that his duty was to "flag" the drivers and tell them in which bins to dump, and "sometimes I would change them off to get a load of rock".

Under the terms of his oral contract with the Potts Company, Sause received 25c a ton for hauling stone dust, 40c a ton for crushed stone, and $3 an hour for "waiting time", if the trucks were not continuously employed on any given day. Each driver would receive work tickets from the Potts Company at the end of each day. The drivers would turn the tickets over to Sause, who would bill the Potts Company for the amounts shown. In the case of Comes, Sause would pay him the amount shown by his tickets, less 5%. The Potts Company never paid Comes. Sause testified: "I would collect the money and then deduct what we call 'brokerage' or 5% from that sum". He testified that Comes was not on his payroll, and not his employee.

In the recent case of *Williams Construction Company v. Bohlen*, 189 Md. 576, 56 A.2d 694, the question presented was whether Bohlen was an employee of the Williams Company at the time of the accident. Bohlen was a truck owner, operating his own truck, whose services had been procured by J. William Sause, who discounted his work tickets for a commission of 5%, but he was paid by the hour rather than by the load, and performed manual labor in addition to hauling, as directed by the Williams Company. He testified that he always received orders from the Williams Company as to what he should do, and that the Company had the right to discharge him. We held there was sufficient evidence to go to the jury as to whether he was an employee of the Williams Company, rather than an independent contractor. This case may be contrasted with *Hilton Quarries,*

*Inc., v. Hall,* 161 Md. 518, 526, 158 A. 19, 22, where it was held that the services of a truck driver were not transferred to the control of the quarry company, as a matter of law. "While the truck driver co-operated with the quarrymen in the loading of the trucks as they wished, he was simply receiving the loads to carry out Schmeltz's contract of carriage". In the case at bar, we do not think the evidence is so clear as to require a finding that Comes was an independent contractor. The essential elements of choice, present in the cases of *Hood v. Azrael,* 167 Md. 641, 175 A. 666; *Washington News Company v. Satti,* 169 Md. 489, 182 A. 286; and *Henkelman v. Metropolitan Life Insurance Co.,* 180 Md. 591, 26 A. 2d 418, are not present here. Kinchin was, of course, barred of an action against the Potts Company, his employer, by the provisions of the Compensation Act. Code 1939, art. 101, § 1 et seq. *Baltimore Transit Company v. State, to Use of Schriefer,* 183 Md. 674, 39 A. 2d 858, 156 A. L. R. 460. We need not consider whether Comes could be considered an employee of the Potts Co., except insofar as the evidence of control by that Company might tend to show that his services had been transferred from Sause to the Potts Company.

The case of *Baltimore Transit Company v. State; to Use of Schriefer,* 184 Md. 250, 262, 40 A. 2d 678, appears to be closely in point. There, after receiving compensation from the City of Baltimore, Schriefer's employer, his widow brought a third-party action against The Baltimore Transit Company and Mrs. Bauerfeind, who hired trucks and drivers by the hour to the City to collect and haul garbage. While it was shown that Mrs. Bauerfeind paid the drivers on the basis of work tickets issued to the drivers by the City, and had the right to hire or discharge them, it was contended that there was no relationship of master and servant because she had no right of direction and control over the drivers after they reported for work. We held, however, that there was legally sufficient evidence to support a conclusion that the driver was still Mrs. Bauerfeind's servant within

the meaning of the rule, because at the time of the accident the driver was still in her general employ directly furthering the general master's business.    See also, *Bentley, Shriver and Company v. Edwards,* 100 Md. 652, 60 A. 283; *Sacker v. Waddell,* 98 Md. 43, 56 A. 399, 103 Am. St. Rep. 374; *Lowell v. Harris,* 24 Cal. App. 2d 70, 74 P. 2d 551, 556; *1 Restatement, Agency,* § 227.

The appellee attempts to distinguish these cases on the ground that the general employment was admitted, and contends that there is no evidence that Comes was in the general employment of Sause. It is true that Sause denied that Comes was his employee or on his payroll. But there was evidence that he alone paid Comes, and he alone could hire or discharge him. Sause alone had the contract of carriage with the Potts Company, and received payment on the basis of the work performed. It is said in *Restatement, Agency,* § 220, comment (i) : "It is not important that the parties believe or disbelieve that the relationship of master and servant exists, except as such belief indicates an assumption of control by the one and submission to control by the other."

The appellee further contends that the above cases are distinguishable because in each case the ownership of the truck was in the general employer, rather than in the driver, which raised a presumption of agency. But that circumstance, though relevant, is not controlling, since the presumption is rebuttable. In *Bauer v. Calic,* 166 Md. 387, 171 A. 713, 719, it was shown that Sutter hired to the McGraw Company, at an hourly rate, trucks owned by Bauer with drivers selected in the first instance by Bauer. The McGraw Company directed the drivers where to go and what to do. In sustaining a judgment against both Sutter and Bauer, it was said: "It can, we think, be inferred from the evidence that Bauer, Sutter, and the McGraw Company exercised, at different times, control over the trucks and the drivers. The record, at least, does not present such clear facts as to justify the court in determining, as a matter of law,

that the relationship of master and servant did not exist between the appellants [Bauer and Sutter] and the drivers of the trucks. See also, *Regal Laundry Company v. A. S. Abell Company,* 163 Md. 525, 163 A. 845; and *Goldsmith v. Chesebrough,* 138 Md. 1, 113 A. 285. In *Sacker v. Waddell, supra,* 98 Md. page 52, 56 A. page 401, 103 Am. St. Rep. 374, it was said: "Whether the person whose immediate negligence or misconduct caused the particular injury was acting at the time as the servant of the person sought to be charged frequently depends upon such a variety of facts that it falls outside of any definite rule and for that reason becomes, under proper instructions, a question of fact for the jury". We think there was legally sufficient evidence to require the submission to the jury of the question whether Comes was the servant of Sause at the time of the accident.

Since the case must be remanded for a new trial, we shall pass on a question of evidence raised by the appellant. In cross-examination by the appellant's counsel, Comes was asked: "who hired you to do this job of hauling?" An objection, on the ground that this was not proper cross-examination, was sustained by the court. Subsequently, after the case was closed, the appellant's counsel made a proffer to show through cross-examination of Comes that he was hired by Sause. We find no error in this ruling, which was well within the discretion of the trial court. Sause had testified that he hired Comes, and there was no evidence to the contrary, so that the appellant was not harmed by the ruling in any event.

*Judgment reversed and case remanded, with costs.*