Annie W. **DOVELL**, et al., Appellants,

v.

**ARUNDEL SUPPLY CORPORATION,**
Appellee.

No. 19392.

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 2, 1965.

Decided May 6, 1966.

· Edgerton, Senior Circuit Judge, dissented.

Mr. Peter S. Taylor, Washington, D. C., with whom Messrs. Sol Friedman, Leonard L. Lipshultz, Samuel Green, and Hyman L. Rosenberg, Washington, D. C., were on the brief, for appellants.

Mr. Edward C. Donahue, Rockville, Md., with whom Mr. John J. Mitchell, Rockville, Md., was on the brief, for appellee.

Before BAZELON, Chief Judge, EDGERTON, Senior Circuit Judge, and FAHY, Circuit Judge.

FAHY, Circuit Judge:

The appellants, Annie W. Dovell and her husband Raymond, sued John Skouzes and Arundel Supply Corporation for damages arising from an injury allegedly suffered by the wife when she was struck by a truck while crossing a street. Skouzes was the driver-owner of the truck. Arundel was alleged to be his master and, therefore, could be held responsible under the doctrine of *respondeat superior*. Arundel moved for summary judgment under Rule 56(c), Fed.R. Civ.P., urging that the data before the court on the motion demonstrated that Skouzes as a matter of law was an independent contractor. The motion was granted and the complaint dismissed as to Arundel, followed by this appeal. We think there was an issue of fact as to the disputed relationship between Arundel and Skouzes which precluded summary judgment.

The facts relied upon by the court may be stated as follows: John Skouzes owned

two large dump trucks. He drove one. He hired a driver for the other. Skouzes kept the trucks at a garage he rented and was responsible for their maintenance. From 1960, the year he obtained the trucks, until this accident in November 1962, he worked for Arundel, who had a daily right of first refusal of Skouzes' services. He was free to seek other work only if Arundel told him he would not be needed that day. This understanding was necessary to Skouzes' employment with Arundel. The contract of employment was oral and could be terminated by either party without notice. A deposition indicates that Skouzes' work for Arundel was quite regular, varying between a five and six-day week. Arundel would load the truck with gravel and measure the load. A representative of Arundel would designate its recipient and leave the choice of route up to the driver unless he asked directions. Efficient service was achieved through requiring a certain number of deliveries to a particular location in a day. To prove delivery and the amount delivered a receipt would be obtained at destination. Arundel paid Skouzes weekly on a ton-mile basis without any deductions. It was on such a delivery run in the late afternoon of November 16, 1962, that the accident occurred.

Skouzes carried liability insurance and also Workmen's Compensation insurance on the driver of his second truck.

A question is raised whether the law of Maryland or of the District of Columbia should be applied. The injured party is a resident of the District and the alleged tort occurred here. The driver of the truck is also a District resident but garages his trucks in Maryland. Arundel is a Maryland Corporation.

The rule in the District of Columbia is that where a conflict of law as to a particular issue exists the law of the jurisdiction with the more substantial interest in the resolution of the issue is applied. Tramontana v. S. A. Empresa De Viacao Aerea Rio Grandense, 121 U.S. App.D.C. 338, 350 F.2d 468, cert. denied, Tramontana v. Varig Airlines, 383 U.S.

943, 86 S.Ct. 1195, 16 L.Ed.2d 206; Williams v. Rawlings Truck Line, 123 U.S. App.D.C. 121, 357 F.2d 581. But there is no conflict of law between Maryland and the District on the question presented. As we understand the cases the Maryland courts would leave to the jury on the facts above outlined the question whether Skouzes was an independent contractor or an employee of Arundel. The District of Columbia, taking guidance from opinions of the Supreme Court on the same question in other fields, and adhering as we understand to the better view, would also leave the question to the finder of fact. Since the law in Maryland and the District is not in conflict the problem of conflict disappears.

In Maryland the law looks to five factors at least in the determination of the relationship of master and servant:

These are: (1) the selection and engagement of the servant, (2) the payment of wages, (3) the power to discharge, (4) the power to control the servant's conduct, (5) and whether the work is a part of the regular business of the employer. Standing alone, none of these *indicia,* excepting (4), seem controlling in the determination as to whether such relationship exists. The decisive test in determining whether the relation of master and servant exists is whether the employer has the *right to control and direct the servant in the performance of his work and in the manner in which the work is to be done.* It will be noted from the above, it is not the manner in which the alleged master actually exercised his authority to control and direct the action of the servant which controls, but it is his *right* to do so that is important. (Citations omitted.)

Keitz v. National Paving and Contracting Co., 214 Md. 479, 491, 134 A.2d 296, 301, 136 A.2d 229, also see Maryland Casualty Co. v. Sause, 190 Md. 135, 57 A.2d 801. In *Keitz* evidence was introduced to show that the truck was an integral and necessary part of the alleged master's business and subject to the same direction and control as his own trucks.

The court held "there was legally sufficient evidence to require the submission [of the question] to the jury * * *." Keitz v. National Paving and Contracting Co., *supra,* at 493, 134 A.2d at 302. The case on its facts is as close to our own as the case principally relied on by appellee, Hood v. Azrael, 167 Md. 641, 175 A. 666. The Maryland Court of Appeals has distinguished *Hood* in both the *Sause* and *Keitz* cases.

Our own case of Grace v. Magruder, 80 U.S.App.D.C. 53, 148 F.2d 679, gives some support to the view that a factual issue is presented. The opinion discussed *inter alia* whether "coal hustlers" who stored coal at the place of a coal customer after its delivery there by the company were independent contractors or company employees. The term "employee" was first considered in the context of the Social Security Act, there involved, and then under common law standards. The hustlers were held not to be independent contractors:

> The vital element which negatives such independence, in the relation between employer and employee, is the right to control the employee, not only as to the final result, but in the performance of the task itself. And, it is the right to control, not control or supervision itself, which is most important. (Footnote omitted.)

80 U.S.App.D.C. at 55, 148 F.2d at 681.

The court referred to Yellow Cab Co. of D. C. v. Magruder, 49 F.Supp. 605, 607, where our District Court stated:

> Probably the most important of these tests is whether the alleged master in any case has the right, even if he does not exercise it, to control and direct the alleged servant, not only as to *what* shall be done but *how* it shall be done. Each case depends upon its own facts and circumstances, and in doubtful cases it is necessary to examine the particular facts to answer the question.

The *Grace* case does not control the present one, for there are significant differences in the facts; but it is worthy of note. The court also stated:

This storage of coal is an essential, integral part of appellant's business; a customary service of retail coal dealers. Nothing could be more destructive of the good will and other intangibles upon which the success of such a business depends than improper service at the point of contact between the company and the customer. (Footnote omitted.)

80 U.S.App.D.C. at 56, 148 F.2d at 682.

These observations, though perhaps to a somewhat less degree, are pertinent to our case. Skouzes was not brought in as a plumber, for example, to perform a function unrelated to Arundel's supply business as such. His function was directly related to and essential to the supplying of gravel by Arundel to Arundel's customers.

It is suggested that United States v. Silk, 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757, stands in the way of the appeal. Though not a tort action but one involving responsibility for Social Security taxes, the facts regarding the relationship of the parties have much in common with those now before us. The case arose by action of the company to recover taxes levied against it as the employer of men the company claimed were independent contractors. The company contracted with truck-owners to deliver coal to its customers at a uniform price per ton, and paid the truckers out of the price received from the customer.

The court detailed further facts bearing upon the relationship of the parties. It said the terms "employment" and "employee" were to be construed to accomplish the purposes of the Social Security legislation, and held the truckers were not employees but independent contractors. In such an action against the United States for recovery of taxes paid, the judge decides questions of fact as well as of law. The case does not persuade us that had a jury decided otherwise the Court would have set the verdict aside. Moreover, in *Silk* the Court reached its decision in light of the purposes of the Social Security Act rather than solely under the common law test which governs our case.

In Baker v. Texas & Pacific Ry. Co., 359 U.S. 227, 228, 79 S.Ct. 664, 665, 3 L.Ed.2d 756, the Court said:

Only if reasonable men could not reach differing conclusions on the issue may the question be taken from the jury.

*Baker* arose under the Federal Employers' Liability Act, but the statutory terms "employee" and "employed" were held not to be used in any special sense; and so the question whether the injured person was within the protection of the Act as an employee of the railroad company was to be decided as a matter of "federal law under the Act." In so deciding the Court cited as relevant Restatement, Agency 2d § 220, comment *c.* which reads:

*c. Generality of definition. * * ** The factors stated in Subsection (2) are all considered in determining the question, and it is for the triers of fact to determine whether or not there is a sufficient group of favorable factors to establish the relation. See Comment *g.* If the inference is clear that there is, or is not, a master and servant relation, it is made by the court; otherwise the jury determines the question after instruction by the court as to the matters of fact to be considered.

The factors stated in Subsection (2) are:

(a) the extent of control which, by the agreement, the master may exercise over the details of the work;

(b) whether or not the one employed is engaged in a distinct occupation or business;

(c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

(d) the skill required in the particular occupation;

(e) whether the employer of the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

Some of these factors argue in favor of the decision on appeal, others that Skouzes was an employee of Arundel. The inference one way or the other is not so clear that reasonable men could reach but one conclusion.

After *Silk* and *Baker* came Ward v. Atlantic Coast Line R. Co., 362 U.S. 396, 80 S.Ct. 789, 4 L.Ed.2d 820, also under the Federal Employers' Liability Act, where the Court reaffirmed its deference to the jury on the existence of an employee relationship to be decided "on the basis of all the relevant factors." *Id.* at 400, 80 S.Ct. at 792.

True it is that in *Ward* the Court was considering the problem under the Federal Employers' Liability Act, as in *Silk,* its consideration was in light of the purposes of the Social Security Act, while our case is free of either of these considerations. But the fundamental problem of relationship is sufficiently the same that those cases convince us that a jury determination is required here, since this is a doubtful case even though a close one.

Reversed and remanded for further proceedings not inconsistent with this opinion.

EDGERTON, Senior Circuit Judge (dissenting):

Skouzes was in the business of hauling. He kept his trucks in repair and carried liability insurance, and also Workmen's Compensation Insurance on the driver of his second truck. Though he hauled chiefly for appellee and was doing so when the accident occurred, he also hauled for others.

It appears to me that reasonable jurors "could not reach differing conclusions" on the question whether Skouzes was an employee of Arundel or an independent contractor. Though the question in *Silk* was whether workers were employees within the meaning of the Social Security Act, the Supreme Court's opinion expressly dealt with tort liability as well. After holding that "unloaders" who furnished only picks and shovels were employees,[1] the Court said: "There are cases, too, where driver-owners of trucks or wagons have been held employees in accident suits at tort or under workmen's compensation laws. But we agree with the decisions below * * * that where the arrangements leave the driver-owners so much responsibility for investment and management as here, they *must*[2] be held to be independent contractors. These driver-owners are small businessmen. They own their own trucks. They hire their own helpers. In one instance they haul for a single business, in the other for any customer. The distinction, though important, is not controlling. It is the total situation, including the risk undertaken, the control exercised, the opportunity for profit from sound management, that marks these driver-owners as independent contractors." United States v. Silk, 331 U.S. 704, 718–719, 67 S.Ct. 1463, at 1471 (1947).

"A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control." RESTATEMENT, AGENCY 2d, § 220(1) (1958). In Ward v. Atlantic Coast Line R. Co., 362 U.S. 396, 398 n. 1, 80 S.Ct. 789, 791 (1960), the Supreme Court held that a District Court erred in refusing to instruct a jury that the "primary factor to be considered" in determining whether a man was employed by the railroad within the meaning of the Federal Employers' Liability Act was "'whether or not the railroad had the power to direct, control, and supervise [him] in the performance of his work * * *.'" The Act "does not use * * 'employed' in any special sense * * *." Baker v. Texas & P. Ry. Co., 359 U.S. 227, 228, 79 S.Ct. 664, 665 (1959).

I would affirm.

---

1. "Cf. Grace v. Magruder [80 U.S.App. D.C. 53], 148 F.2d 679." 331 U.S. at 717 n. 12, 67 S.Ct. at 1470.

