## COURT OF COMMON PLEAS OF BALTIMORE CITY

Filed March 1, 1894.

R. B. MESSICK
VS.
THE YOUNGSTOWN BRIDGE CO.

*Thomas S. Hodson* for plaintiff.

*William A. Fisher* and *Sylvan Hayes Lauchheimer* for defendant.

PHELPS, J.—

Oral opinion of Judge Phelps in passing upon the prayers.

Gentlemen, I have availed myself of the opportunity afforded since the adjournment of the Court to make a very thorough re-examination of the principles involved in this interesting case, and of the authorities that have been cited, and a good deal more. Quoting the language of the Court of Appeals in Wachter's case, 60 Md., as far as a judge can be, or ought to be, I have been studious to find some evidence upon which the plaintiff's cause can go to the jury, but without success.

With respect to this fourth prayer, which the plaintiff put in at the suggestion of the Court, I have found that the plaintiff's counsel understood his case much better than the Court thought it understood it, and was justified in not offering such a prayer. I find that there is an entire absence of any specific evidence of a failure on the part of the defendant to provide material. The only evidence there could be on that subject being only inferential from the fact of the absence of the material at the particular place at the right time. But that would be just as well accounted for upon the hypothesis of negligence on the part of the employee, whose duty it was to have the particular brace, or guy, or whatever it was that was needed, at the place, as it would be upon the hypothesis that the defendant company failed absolutely to provide any suitable materials at all. Then again, I find the prayer defective for another reason. There is no evidence whatever that knowledge was brought home to the principal here, to the defendant company itself, of the defect in the supplying of the material. That prayer according to a line of decisions in a number of States, headed by the Supreme Court of the United States, would be a proper prayer to grant. The State of Maryland has, ranged against that class of cases, a class of cases backed up by English decisions, which, it may be said, have their type in the Wonder case, 32 Md., a case which has been repeatedly recognized and re-affirmed in later decisions of the Court of Appeals.

That case (Wonder vs. The B. & O. Railroad, 32 Md. 411) is in sharp contrast with the case of Herbert (N. P.

R. R. vs. Herbert, 116 U. S. 642). According to the Herbert case this would be a proper and legitimate prayer. The principle laid down by a majority of the Supreme Court in that decision is if there is a defect in machinery—and I suppose the same principle would apply to a failure to provide proper appliances and material—it is due either to the fact that the person, or employee, whose duty it was to supply it had failed to do so—and in that case they say, it being a duty that devolved upon the principal himself the employee was for that purpose the representative of the principal—or else it was because the principal had failed to supply it. That case has not been followed here.

In Yates vs. The McCullough Iron Co., 69 Md. 370, it is referred to in such terms that the conclusion cannot be escaped that the Court having that case before them, declined to follow it. Previous to that the doctrine laid down in Wonder's case, 32 Md., was, that a mere defect in machinery is not, in itself, proof of negligence on the part of the principal, but if that defect is attributable to negligence of a fellow servant then the principal is not liable unless you go one step further and prove that the principal was negligent in the employment of that fellow servant by whose omission the injury occurred. That disposes, gentlemen, of the fourth prayer, which was offered upon the voluntary suggestion of the Court.

The defect in the other prayers of the plaintiff, in my judgment, is this: Granting all that the plaintiff claims with respect to the position of Mr. Ramsay, and assuming he was vice-principal, I fail to find the evidence in the case of Mr. Ramsay's negligence. I don't agree with counsel that it was Mr. Ramsay's duty to go upon that roof and see himself by a personal inspection the condition of the bolts. If that could be claimed to be the duty of a vice-principal, there would be some weight in the contention, and the conclusion would follow. As vice-principal his duties were at headquarters, and it was his duty and his right to rely upon the senses of his subordinates, if they were competent persons, and had been properly selected. In this case he appears to have relied upon the knowledge of the foreman, a competent man, presumed so to be, no evidence to the contrary having been offered, would not do so imprudent or reckless a thing as to remove the braces that held the roof until he was sure the rafters had been properly secured by the requisite bolts and other fastenings. I say Mr. Ramsay, in my judgment, had a right, in the first place, to assume the foreman was a competent man—there being no proof that he was not—and being a competent man, he had a right to assume, in the second place, he would not have done a thing of that kind. There was no positive, peremptory order to remove the braces, but it was in the form of a suggestion. There is no proof here that King told Ramsay of the condition of the roof at that time, nor is there proof that Ramsay had actual knowledge of the condition of the roof. The only theory that is urged is he ought to have known it, as counsel has urged, ought to have gone on the roof and inspected it with his own eyes. As I say, I don't agree with counsel in that view of the duties of a principal or vice-principal.

In respect to the causes that concurred in this unfortunate disaster, in the argument we heard a great deal on both sides, some of it quite ingenious, and sometimes metaphysical, as to which was proximate cause and which remote cause, whether the loose bolts, or the taking away of the braces, may be said to have been the proximate cause of the accident. We have both elements—both contributing, concurring, conspiring factors in the result. They were not successive. They were contemporaneous. This is not the squib case (Scott vs. Shepherd, 2 W. Black 892) where Shepherd threw a squib which fell on Yates' stall from which it was thrown on Ryal's stall, who threw it to another part of the market house putting out the eye of the plaintiff Scott. This is the case of two conspiring causes, both indispensible to produce the result. The removal of the braces would have been harmless if the bolts had been fastened. If the braces had been left standing the bolts could have been loosened with impunity. Both together were the cause of this accident—neither alone could be said to have been, and, therefore, I don't think the refined arguments on remote and prox-

imate cause enter properly into the case.

I grant the defendant's first prayer, which is in these terms:

The defendant prays the Court to instruct the jury that the only evidence which has been offered in the case to show negligence charges the negligence upon King, the foreman, or upon him and the men who worked upon the roof, and that therefore the plaintiff cannot recover, because the negligence shown, if there is any, is that of a co-employee or co-employees of the plaintiff.

Plaintiff declines to answer.

*Non pros.*