# BALL *v.* UNITED STATES EXPRESS COMPANY.

MASTER AND SERVANT; NEGLIGENCE; EXPERT EVIDENCE.

1. Where, in an action against a master for the death of his servant, an engineer in charge of an internal-combustion engine in the garage of the defendant, the deceased having been killed by the falling of a chimney provided for the escape of gas from the engine, caused by the explosion of gas accumulated in a pit at the base of the chimney, there is conflict of evidence as to whether the chimney as designed was dangerous, and also as to whether such a chimney was ever before installed in a similar plant, or used for similar purposes, the question of the defendant's negligence is for the jury, and the trial court properly refuses to direct a verdict for the defendant. (Citing *Washington Asphalt Block & Tile Co.* v. *Mackey,* 15 App. D. C. 410.)

2. Where, in an action against a master for the death of his servant, an engineer in charge of an internal-combustion engine of the defendant, expert evidence by the defendant has been admitted to show that the explosion which resulted in the death of the decedent was caused by his negligent operation of the engine, it is error for the trial court to refuse to allow an engineer called by the plaintiff in rebuttal to testify that the operation of the engine by the deceased was not negligent.

3. An engineer in charge of an internal-combustion engine cannot be said to have assumed the risk attendant upon its use, so as to preclude a recovery from his employer by his administratrix for his death, where he was killed by the falling of a chimney through which gas from the engine escaped, caused by the explosion of gas in a pit at the base of the chimney, because he was in defendant's employ when the chimney was constructed, and made suggestions in relation to its construction, in the absence of affirmative proof showing he knew of the danger attendant upon the operation of the engine in connection with the chimney.

No. 1919. Submitted October 16, 1908. Decided November 16, 1908.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia, on a verdict directed by the court, in an action to recover damages for the alleged negligent killing of the plaintiff's intestate.

*Reversed.*

The facts are stated in the opinion.

*Mr. Daniel W. Baker, Mr. Joseph C. Sheehy,* and *Mr. Frank J. Hogan* for the appellant.

*Mr. Arthur A. Birney* and *Mr. Henry F. Woodard,* for the appellee:

1. That a jury composed of men of different trades and occupations should not be permitted to pass upon the merits of a technical engineering question, upon which competent engineers may disagree, is settled by judgments of the Supreme Court and of this court. *Tuttle* v. *R. R. Co.* 122 U. S. 189–194; *Asphalt Co.* v. *Mackey,* 15 App. D. C. 425. See also, *Miss. River Logging Co.* v. *Schneider,* 74 Fed. 195. In this case there is no claim of defective construction, or of want of repair, but only that the design was so wrong in theory that the defendant was negligent to adopt it. It having appeared without contradiction that this chimney was built under competent advice, and that the plan thereof is commonly employed for like uses, it would be intolerable to permit a jury to find the defendant negligent in having adopted it. The master's "responsibility cannot be made to depend upon the varying notions or opinions of juries as to what kind or structure of machinery he should use in his work." *Asphalt Co.* v. *Mackey,* 15 App. D. C. 425.

2. Mr. Ball first suggested the building of the chimney; was present when it was built, and was not only familiar with its construction, but competent as anyone in defendant's service to determine if it was safe or dangerous. He assumed any risk. *Butler* v. *Frazee,* 25 App. D. C. 392; *Tuttle* v. *Milwaukee R. R. Co.* 122 U. S. 189–194; *So. Pacific Co.* v. *Seley,* 152 U. S. 153. It is essential to a recovery that the servant was ignorant of the

defects, and did not have equal means with the master of knowing of them. *Hunt* v. *Kane,* 100 Fed. 256; 20 Am. & Eng. Enc. Law, p. 112.

3. The evidence fully justified the trial court in saying: "There is absolutely no theory proven by the evidence which would justify any reasonable man in having any doubt on the proposition that this explosion was caused by Ball himself." All the witnesses regarded the engines entirely safe when properly used; if improperly used, Ball personally misused them. If Ball's recklessness caused the explosion, how can it be said that he did not contribute to the injury for which the suit is brought?

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This action was brought in the supreme court of the District of Columbia by appellant, Minnie T. Ball, plaintiff below, as administratrix of the estate of her husband, John J. Ball, against the defendant company, to recover damages for the death of her husband, who was killed while in the employ of said company. At the trial, when both parties had submitted their evidence, the court, upon the prayer of counsel for defendant, instructed the jury to return a verdict for the defendant. From the judgment entered thereon, the case comes here on appeal. At the time of the accident that caused Ball's death, he was employed as engineer in the garage of the defendant company in this city. It appears that, for the purpose of charging the automobiles used by the defendant for delivery purposes, it had installed in its garage two of what are described in the record as "Meitz & Weise internal-combustion engines." The fuel used in these engines was coal oil, which was vaporized by being passed, by means of a pump attached to the engines, over a heated ball. When mixed with a certain proportion of air, a vapor was formed which constituted a gas which, when exploded in the cylinders of the engines, provided the motive power for the operation thereof. The engines were provided with exhaust pipes which carried the gases, burned and unburned, escaping

therefrom, into a pit under the floor of the engine room. To convey these gases from the pit, a brick chimney had been constructed by defendant.

The chimney here in question was constructed 53 feet high, in the usual manner of constructing brick chimneys. On the top of the chimney there was a 9-foot circular iron stack, with holes perforated in the side, the top of which was closed by a solid iron cap. Inside the chimney there were placed six cast-iron baffle plates, which were put in alternately, the first plate being placed 4 feet from the base and the other five consecutively above, in distance 4 feet, 6 inches from each other. These plates formed a partial obstruction in the inside of the chimney, and reduced the draft area about 70 per cent. The pit into which the gases were forced from the engines was connected with the base of the chimney by an 8-inch circular opening, through which the gases passed from the pit into the chimney, and thence through the tortuous passage and the perforations to the open air. The baffle plates seem to have been placed in the chimney for the purpose of muffling the sound that was caused by the escape of the gases.

It is contended by plaintiff that the construction of this chimney was such as to render it unsafe, and that, by reason of the insertion of these baffle plates and the placing of the perforated rim at the top, there was not sufficient area left inside the chimney to carry away the gases and furnish an escape for any explosion that was liable to occur from the accumulation of gases in the pit and the base of the chimney. There is no contention that there was any defect in the construction of the chimney, but that the chimney, in plan and design, was not adapted for the purpose to which it was here applied; and, by reason of its insufficiency to carry away the gases and withstand explosions that were liable to occur in the pit and the base of the chimney, it was unsafe and dangerous in its design. The defect in the chimney relied upon by plaintiff is described in the bill of particulars as follows: "The negligence and unskilfulness in the erection of said chimney consisted of the placing, or allowing to be placed, therein a number of baffle plates and the

topping of said chimney with a perforated sheet-iron pipe, which was capped; these combined causes, or either of them, were such as to prevent dangerous gases to have the free exit which was necessary to safety, and constituted the alleged defect." The accident was caused by an accumulation of gases in the pit exploding with sufficient force to shatter the base of the chimney and cause it to fall on the engine house. The deceased was standing, at the time of the explosion, under a skylight in the roof of the engine house, through which a portion of the chimney fell, striking and killing him.

The cause of action set forth in the plaintiff's declaration is substantially that, by reason of the defendant carelessly, negligently, and unskilfully erecting the chimney in question, and by its careless and negligent use and maintenance of the same, the death of plaintiff's intestate resulted.

The plaintiff introduced a number of engineers as expert witnesses, to show that the chimney was improperly designed, and was so constructed as to render it unsafe; that it made the engine house an unsafe place in which to work, and that the use to which it was here applied was not a common one. When plaintiff rested her case, counsel for defendant moved the court to instruct the jury to return a verdict for it. This motion was properly denied. The trial judge gave the following as his reason for its denial: "Whether a person of ordinary prudence would have adopted this device (referring to the chimney) is a question of fact, and for the jury." The evidence produced by the plaintiff raised an issue of fact as to whether the defendant, in adopting the style of chimney that it erected, acted prudently or imprudently; whether the chimney was safe or dangerous; and whether, in adopting, installing, and maintaining this particular device, defendant was guilty of negligence.

The main question here for the jury to determine, touching the negligence of the defendant, was whether or not the chimney constructed by it was the kind usually employed in connection with the operation of gas engines such as were here used. Relating both to general use and to the particular purpose to which the chimney was here applied, the record discloses evidence tend-

ing to show that brick chimneys with baffle plates and caps are not in common use. The mere fact that a particular machine or appliance adopted and used by a master is dangerous is not of itself sufficient to charge the master with negligence, so long as the device is one commonly used by others engaged in the same business. In the operation of much of the machinery and devices used in the various lines of industry, there is great danger; but, so long as the device employed is one generally used in the business, the master, by the mere selection and installation of the device, cannot be charged with negligence. This court, in *Washington Asphalt Block & Tile Co.* v. *Mackey,* 15 App. D. C. 410, clearly stated the rule: "It is true, when the conduct of a party as an employer, using machinery in his work, amounts to negligence, to the damage of his employees, in failing to keep his machinery or appliances in safe repair and operative condition, the law holds him responsible; but his responsibility cannot be made to depend upon the varying notions or opinions of juries as to what kind or structure of machinery he should use in his work. Such a principle, if sustained, would tend to embarrass all the industries of the country, that are carried on by machinery, the most of which is attended with more or less danger to those operating the machinery." In the same case, quoting from *Titus* v. *Bradford, B. & K. R. Co.* 136 Pa. 618, 20 Am. St. Rep. 944, 20 Atl. 517, the court said: "Absolute safety is unattainable, and employers are not insurers. They are liable for the consequences, not of danger, but of negligence; and the unbending test of negligence in methods, machinery, and appliances is the ordinary usage of the business. No man is held by law to a higher degree of skill than the fair average of his profession or trade, and the standard of due care is the conduct of the average prudent man. The test of negligence in employers is the same; and however strongly they may be convinced that there is a better or less dangerous way, no jury can be permitted to say that the usual and ordinary way, commonly adopted by those in the same business, is a negligent way, for which liability shall be imposed. Juries must necessarily determine the responsibility of individual conduct, but they cannot be al-

lowed to set up a standard which shall, in effect, dictate the customs or control the business of the community." Recognizing these rules as to the rights of employers to protect themselves from liability by the selection of machinery and devices customarily used in the business, the Supreme Court, in the case of *Mather* v. *Rillston,* 156 U. S. 391, 39 L. ed. 464, 15 Sup. Ct. Rep. 464, has announced a principle that limits, to some extent, the foregoing rule. The court said: "Indeed, we think it may be laid down as a legal principle that, in all occupations which are attended with great and unusual danger, there must be used all appliances readily obtainable known to science for the prevention of accidents, and that the neglect to provide such readily obtainable appliances will be regarded as proof of culpable negligence. If an occupation attended with danger can be prosecuted by proper precautions without fatal results, such precautions must be taken by the promoters of the pursuit or employers of laborers thereon. Liability for injuries following a disregard of such precautions will otherwise be incurred, and this fact should not be lost sight of." In the present case, there is a sharp conflict in the evidence, not only as to the dangerous design of the chimney here constructed, but on the question of common use, or, in fact, whether, within the knowledge of some of the witnesses, such a chimney as the one in question was ever before installed and used for the purpose for which the one here was employed. The negligence or prudence of the defendant was involved in this issue of fact, and its determination was clearly one for the jury.

The defendant offered considerable evidence as to the construction of the chimney, and why the plan of construction used had been adopted by the defendant. It then came to the question of contributory negligence, and introduced in this behalf the only living witness of the accident, one Fieles, who testified, in substance, that, on the evening the explosion occurred, one of the engines was not working properly, and that he assisted the deceased in trying to get it to work; that the iron ball over which the oil was pumped for the purpose of vaporizing it was not hot; and that the deceased pumped oil into the engine sev-

eral times immediately before the explosion. The chief engineer of the defendant company was then introduced as a witness, and was asked the following question:

*Q.* Was it good service or negligent service on the part of an engineer to have allowed the oil to have escaped for several minutes into that pit?

*A.* Why, it was carelessness to do it. A man of Mr. Ball's knowledge, I can't understand why he did do it, as capable a man as he was.

When defendant rested its case, plaintiff offered, by way of rebuttal, to prove by one of the engineers, who had qualified as an expert when plaintiff was submitting her case in chief, that the action of Ball, at the time the explosion occurred, as testified to by Fieles, was not careless or negligent. On this point, the record discloses the following:

*By Mr. Hogan:*

*Q.* Mr. Boesch, you were qualified yesterday. Have you heard the testimony this morning?

*A.* Not all of it; I came in late.

*Q.* Assuming that, on the night the explosion occurred at the United States Express Company garage, the heated ball which vaporized the oil was not hot, and the engine was not firing or running properly, and assuming that there was an arrangement connected with an automatic pump which threw oil into the engine, and engineer Ball, in pumping to get it to operate properly, used that oil pump and pumped oil into the engine by hand, at the rate of say about four or five times every other minute, for a period of about ten to fifteen minutes, and immediately after this operation by Ball, an explosion occurred; will you tell us whether that was, on the part of engineer Ball, a dangerous or unsafe act?

*A.* Perfectly proper. The pump was put there for that purpose. It was the only thing he could do.

*The Court:* Wait a minute,—I don't know whether this is proper for expert opinion.

*Mr. Hogan:* There was no objection to it.

*The Court:* Well, the court interposes an objection, if counsel does not.

*Mr. Birney:* I object to it now, on the ground that it is not a matter for expert testimony.

The court sustained the objection, and refused to permit the testimony to be received, to which ruling counsel for plaintiff excepted. Counsel for plaintiff then offered to show by three witnesses, Mr. Sasse, Mr. Boesch, and Mr. Reed, "that the action of the deceased, Ball, under the circumstances testified to by the witness Fieles, was the proper action for the engineer to take; that he used the hand pump as it was intended to be used, and that the exhaust or dripping of oil into the pit would not have been dangerous, had it not been for this character of stack." The court rejected the offer on the ground that it was not a proper subject for expert testimony. Counsel for plaintiff preserved an exception, which appears in the record.

The ruling of the court upon this point constitutes one of the assignments of error upon which appellant specially relies. The court committed error in excluding this evidence. The propriety or impropriety of the actions of the deceased at the time of the accident were a proper subject of inquiry. The actions of the deceased at the time of and immediately before the accident occurred were detailed by the only living witness. This evidence was adduced by the defendant as part of its defense. The defendant then introduced its engineer, as an expert witness, as it was competent for it to do, to show that the actions of deceased, based upon the facts disclosed by Fieles, were careless and negligent. It was competent for plaintiff, in rebuttal of this evidence, to prove by expert witnesses, men skilled in the same line of business the deceased was engaged in at the time of his death, whether, applying the facts so detailed to the conditions there existing, the actions of the deceased were prudent or otherwise.

It will be observed that the qualifications of the witnesses offered by plaintiff as experts were not challenged. That question had been passed upon when plaintiff submitted her evidence in chief. The evidence was not excluded for that reason, but on the ground that the opinion of an expert engineer was not proper evidence upon which the jury might determine whether, upon a given state of facts, another engineer had acted properly in connection with the operation of his engine. As in this case, where the subject under investigation is wholly unfamiliar to the jury, no way is afforded for the jury to arrive at an intelligent conclusion except through the medium of expert testimony. On this principle, it is proper to receive the opinions of mechanics, artisans, and those experienced in the proper mode of doing work, as to the erection of buildings, the operation of machinery, and the comparative merits of different methods of operation and construction. Such witnesses may express opinions as to whether a particular mode of operating a certain machine would be dangerous or safe. 2 Jones, Ev. p. 819, and cases cited. It was exactly the kind of evidence upon which defendant was relying to establish improper action on the part of deceased, and it is not clear just why plaintiff should not be allowed to avail herself of similar evidence to establish proper action. On the subject of the contributory negligence of the deceased, the jury was entitled to the benefit of this evidence, from witnesses skilled in engineering, and competent to enlighten the jurymen upon a subject on which they were not presumed to have a technical knowledge.

It is contended, however, that, under the evidence as disclosed by the record, admitting the negligence of the defendant, the plaintiff would still not be entitled to recover. It is insisted by counsel for defendant that plaintiff's intestate was present, and in the employ of defendant, at the time the chimney was constructed; that he made suggestions in relation to its construction, which were considered by the persons in charge; and that he was familiar with the construction of the chimney and the pit, and, being so familiar, assumed the risk attendant upon their use. It appears from the evidence of one of defendant's

witnesses that the deceased was an operating engineer, and that he was regarded as competent in operating gas engines. It is therefore contended by counsel for plaintiff that it was no part of the duty of an operating engineer to design or construct chimneys; and that he would not be bound to know, or even presumed to know, whether the design of a chimney erected by his employer was safe or dangerous. There is no evidence in this record that the plan followed in the construction of the chimney in question was one designed by the deceased or even suggested or recommended by him. Neither is there any evidence that he held himself out as being competent either to design or construct such a structure. In the absence of affirmative proof to show that the deceased knew of the danger attendant upon the operation of the engines in connection with the chimney here in question, we think no presumption can be indulged against the plaintiff in this case that the deceased understood the unsafe character of the chimney. The court, in *Yates* v. *McCullough Iron Co.* 69 Md. 370, 16 Atl. 280, said: "We take it to be clear, as a general rule, that the servant assumes all such risks arising from his employment as he knew, or, in the exercise of a reasonable degree of prudence, might have known, were naturally and reasonably incident thereto; and he cannot recover against the master for injuries arising from such patent risks." This rule is as strong in favor of the master as it is possible to express it and still keep within the limits of the law.

In the absence of special knowledge or skill in the construction of a chimney for the purpose here contemplated, and in the absence of any apparent defect in its construction, the deceased could not be charged, as a matter of law, with notice of its dangerous design, especially when there is evidence strongly tending to show that the use was an uncommon one. The duty and business of plaintiff's intestate was to operate the gas engines in the garage, and it can hardly be held that the devices employed by the defendant for conveying away the gases that were exhausted from the engines into the pit and the chimney were incident to the operation of the engines. If they were not, it cannot be presumed that the deceased, in the exercise of a

reasonable degree of prudence, must have known of the dangerous character of the chimney. On the contrary, he had a right to presume, and to act upon the presumption, that the defendant had performed the duty incumbent upon it of furnishing him with a safe place to work and with materials, appliances, and surroundings reasonably good and adequate.

The judgment is reversed, with costs, and the cause remanded for a new trial. *Reversed.*